

Robert L. Weigel (RW 0163)
Peter M. Wade (PW 5462)
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiff Jennifer Chin-Fong*

**13 CV 6649**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Jennifer Chin-Fong,

    Plaintiff,

  v.

Bryan White, and the City of New York,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

2013 Civ. ___

**COMPLAINT**

**JURY TRIAL DEMANDED**

RECEIVED SEP 19 2013 U.S.D.C. S.D. N.Y. CASHIERS

   Plaintiff Jennifer Chin-Fong, by and through her attorneys, Gibson, Dunn & Crutcher

LLP, as and for her complaint against the Defendants New York City Police Officer Bryan

White (Shield # 21857) and the City of New York (the "City"), respectfully alleges as follows:

## NATURE OF THE ACTION

  1.  On October 4, 2012, Jennifer Chin-Fong, a petite, 62 year old Asian-American

woman who was in a minor car accident on East 82nd Street between Park Avenue and

Lexington Avenue on Manhattan's Upper East Side, was assaulted, battered, subjected to an

excessive use of force and falsely arrested and imprisoned by Defendant police officer Bryan

White.

2.      Rather than assisting Ms. Chin-Fong to obtain information from the driver who rear-ended her car, Defendant White terrorized Ms. Chin-Fong and brutally ripped her out of her car while she was sitting behind the steering wheel with her seat belt fastened.  Defendant White threw Ms. Chin-Fong out and away from her car and into the street, where her head struck the asphalt hard, causing a concussion.  The blow to her head and body caused her incredible pain, and she still suffers from the effects of Defendant White's egregious conduct today.

3.      Having given Ms. Chin-Fong a concussion, Defendant White then decided to arrest Ms. Chin-Fong.  He placed her in handcuffs and transported her to the 19th Precinct where she began a day spent in handcuffs being shuttled from one precinct to the next and to and from Central Booking, all while suffering from extreme physical pain, mental anguish, emotional distress and humiliation.  Ms. Chin-Fong was not arraigned and released until well after midnight.

4.      Upon information and belief, Defendant White, having used an excessive amount of force in grabbing Ms. Chin-Fong, pulling her from her car and giving her a concussion, tried to cover up his misconduct by arresting Ms. Chin-Fong for resisting arrest.  After keeping Ms. Chin-Fong in police custody for an unnecessarily prolonged period of time, Defendant White ultimately charged her with obstructing governmental administration and disorderly conduct as a means to try to justify his outrageous conduct.

5.      Since the assault, Ms. Chin-Fong has suffered every day from the physical and emotional injuries inflicted upon her, and her ability to earn a livelihood has been severely affected.  Not long after the incident, she was diagnosed with post-concussion syndrome and told that her recovery could take a very long time.  She has had chronic headaches, pain throughout her body, problems with walking and vision, dizziness, and a host of other symptoms.  In

addition to the myriad physical symptoms she is suffering from, since that day she regularly is confused, anxious, and emotionally distraught in ways that she never was before. As a result, Ms. Chin-Fong has suffered – and continues to suffer – a substantial loss of income, incurred numerous hospital bills which she cannot afford to pay, and has been unable to obtain the treatment she needs to get better because she does not have health insurance.

6.    This is a civil action by which Ms. Chin-Fong seeks relief for Defendants' violations, under color of law, of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the United States Constitution, and the laws of the State of New York.

7.    Defendant White, under color of law and in the scope of his employment, caused Ms. Chin-Fong to be subjected to, *inter alia*, excessive and unreasonable force, assault and battery, and false arrest, detention and imprisonment. These actions, which Defendants knew or should have known were extremely unreasonable and taken without any probable cause, have deprived Ms. Chin-Fong of her rights and caused her severe physical and emotional injury.

8.    Defendant City of New York is liable for the deprivation of Ms. Chin-Fong's civil rights, under 42 U.S.C. § 1983, because its failure to adequately train, supervise or discipline its officers constitutes a policy or custom that was the direct cause of Ms. Chin-Fong's injuries. Defendant City of New York is liable under state law for the tortious acts of its employee, Defendant White, taken within the scope of his employment, on the basis of *respondeat superior*.

9.    Ms. Chin-Fong, by this action, seeks recovery of the damages arising out of, and relating to, the injuries and ongoing suffering inflicted upon her by Defendant White and the City, including, but not limited to, compensatory damages for past and future economic loss in the form of medical bills and lost wages, pain and suffering, and punitive damages.

## PARTIES

10.     Plaintiff Jennifer Chin-Fong is a United States Citizen and a resident of New Jersey.  At all relevant times she has resided in New Jersey.

11.     Defendant City of New York is a Municipal Corporation, organized and existing under the laws of the State of New York, and is and was the employer of Defendant Bryan White.

12.     Defendant Bryan White (Shield # 21857) was at all relevant times a New York City police officer, employed, trained and supervised by the City, and responsible for carrying out the policies, practices, and/or customs of the New York City Police Department ("NYPD"). He is sued in his official and individual capacities.  Upon information and belief, at all relevant times mentioned in this complaint, Defendant White was stationed at the 19th Precinct at 153 East 67th Street, New York, New York 10065.  Defendant White was acting within the scope of his employment and under color of law at all relevant times.

## JURISDICTION AND VENUE

13.     This action arises under 42 U.S.C. § 1983, the United States Constitution, and the laws of the State of New York.

14.     This Court has subject matter jurisdiction over all claims arising under Federal Statute and the United States Constitution, and that arise from the deprivation of civil rights, pursuant to 28 U.S.C. §§ 1331 and 1343(3).

15.     Plaintiff further invokes the supplemental jurisdiction of this court, pursuant to 28 U.S.C. § 1367, to hear and decide all claims arising under New York State law that are so related to the claims over which it has original jurisdiction as to form part of the same case or controversy.

16.     Defendant Officer Bryan White is a citizen of the State of New York.  On information and belief, Officer White has a residence in or around New York City and within New York State, as required by New York Public Officers Law.  On information and belief, that residence is his domicile, and he is therefore a citizen of New York State.  Defendant City of New York, as a political subdivision of the State of New York and not simply an arm or alter ego of the state, is a citizen of the State of New York.  Plaintiff Jennifer Chin-Fong is a resident of and citizen of the State of New Jersey.  The matter in controversy in this suit exceeds the sum or value of $75,000.  Therefore, Plaintiff further invokes the Court's jurisdiction on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events and omissions complained of and giving rise to this claim occurred within the Southern District of New York.

## NOTICE OF CLAIM

18.     On December 14, 2012, Plaintiff timely filed a Notice of Claim with the Office of the Comptroller of the City of New York in compliance with New York General Municipal Law § 50-e, within the statutorily required 90 days of the accrual of the claim.  The Notice set forth the facts underlying Plaintiff's claim against all municipal defendants.

19.     The City assigned Plaintiff a claim number, Claim No. 2012PI031719, and Plaintiff was noticed of and subjected to an examination pursuant to N.Y. General Municipal Law § 50-h on June 3, 2013.

20.     More than 30 days have passed since the filing of the Notice of Claim and, to date, adjustment or payment thereof has been refused or neglected.  *See* N.Y. General Municipal Law § 50-i(1)(b).

21.    This action has been commenced within one year and ninety days of the occurrence of the events giving rise to this Complaint.

## JURY TRIAL DEMANDED

22.    Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## STATEMENT OF FACTS

23.    Plaintiff Jennifer Chin-Fong is a petite, 62 year old woman. She is four feet nine inches tall and weighed only one hundred and ten pounds in October 2012. Originally born in China, she grew up largely in Trinidad and Tobago before immigrating to New York at the age of twenty one. She is a citizen of the United States. Prior to the events that gave rise to this action, Ms. Chin-Fong had no criminal record.

24.    When Ms. Chin-Fong first arrived in the U.S., she worked hard to achieve her cosmetology license, and eventually opened her own hair salon in Manhattan, which she operated for 12 years before giving it up to raise two children largely on her own. Ms. Chin-Fong has worked steadily as a hair stylist at another salon ever since, and she has been with her current employer for over ten years. Although it has often been difficult to make ends meet, Ms. Chin-Fong finds great pride and happiness in being able to provide for herself and her family.

*The Events of October 4, 2012*

25.    On October 4, 2012, at approximately 8:45 a.m., Ms. Chin-Fong was on her way to work. She was driving her boyfriend's car when, through no fault of her own, she was in a car accident. Ms. Chin-Fong was driving east on East 82nd Street, a one way street. As she approached Lexington Avenue, she noticed that traffic was at a standstill because of a double parked vehicle which appeared to be waiting to pull into a parking space. No one could drive

around the double parked car, so Ms. Chin-Fong and the other drivers waited as the light changed several times. Some drivers, including a police vehicle behind her, began to honk their horns.

26.     When the traffic finally started to move, the car in front of Ms. Chin-Fong began to move and Ms. Chin-Fong prepared to do the same. At that moment, the car behind Ms. Chin-Fong struck her rear bumper. Knowing that when you are in an accident, you are supposed to exchange information with the other driver, Ms. Chin-Fong exited her vehicle to assess the damage and engage in a brief discussion with the woman who hit her. Since there was still no room to pull either of the vehicles over to the side, this exchange necessarily took place in the middle of the street.

27.     While the two women were talking next to their cars, Defendant Officer White approached the scene. Ms. Chin-Fong was relieved to see a police officer who might be able to assist them. To her shock, however, Officer White began screaming angrily at Ms. Chin-Fong and the other driver to "get out of here, get out of here." He never acknowledged that there had been an accident, nor did he say anything else.

28.     Officer White, on information and belief, is well over six feet tall and 200 pounds. By any measure, he is a large man, especially compared to the four feet nine inches tall Ms. Chin-Fong. Ms. Chin-Fong was immediately frightened and intimidated by Officer White's conduct. Before she could bring herself to speak or react, he turned around and walked back towards his police car.

29.     Ms. Chin-Fong, who had hoped the police officer had come to assist her following the car accident, was extremely distraught and confused by his actions. She quickly

returned to her car without having a chance to assess the damage from the accident or obtain any information from the other driver.

30.     When Ms. Chin-Fong re-entered her car, she noticed that the traffic signal had just changed to red.  Since she had not yet exchanged information with the other driver, she got back out of the car to do so while the light was red.  As Ms. Chin-Fong stood outside her vehicle, the light still red, she saw Officer White storming back.  She was too fearful for her own safety following Officer White's prior conduct to insist that she be allowed to exchange information with the driver who hit her.  She decided that the damage to the car was not worth a confrontation with the intimidating officer.  She turned back to her car, climbed into the driver's seat, and buckled her seatbelt.

31.     As she prepared to drive on and go to work, Officer White hurried up to the car. He did not say a word or give Ms. Chin-Fong any instruction or indication as to his intentions. Instead, without warning or justification, he opened the driver's side door and forcefully grabbed Ms. Chin-Fong by the left arm and started to scream "get out, get out, get out."  Ms. Chin-Fong was terrified.  Officer White pulled forcibly at her arm over and over again, despite the fact that she was belted in and could not move.  Officer White was clearly enraged and using force without thought or deliberation.

32.     Ms. Chin-Fong, as previously noted, is tiny in comparison to Officer White, and she was terrified by his violent and angry conduct.  She sat paralyzed with fear in her seat with her hands still on the steering wheel and begged Officer White to stop.  Despite her pleading, he pulled forcefully on her arm at least four to five times causing extreme pain to Ms. Chin-Fong.

33.     Upon information and belief, Officer White eventually realized that Ms. Chin-Fong could not move because her seatbelt anchored her in her seat, but he was determined to

forcibly remove her from the car.  Instead of asking Ms. Chin-Fong to unbuckle her seatbelt and exit her car, Officer White reached over her body and unbuckled the seatbelt.  Then, with a harsh grip on her arm, Officer White pulled Ms. Chin-Fong out of the car, flinging her entire body clear into the air.  Ms. Chin-Fong landed hard on the asphalt, striking the right side of her head and body.  The impact from hitting her head and body on the street caused her additional severe pain and a concussion.  She was shocked and in pain, and unable to fully comprehend what had just happened or what might happen next.

34.     Despite having forcibly pulled Ms. Chin-Fong out of her car and thrown her to the ground, Officer White did nothing to restrain her.  He did not pat her down.  He did not tell her she was under arrest.  He did not put her in handcuffs.  He did not even instruct her not to move. Instead, he dragged Ms. Chin-Fong to her feet and left her standing in the road while he walked to the sidewalk.  Ms. Chin-Fong was distraught and extremely humiliated.  She said to Officer White "you are not supposed to treat me like that. You are a police officer, you are supposed to protect us, not abuse us."  In response, Officer White turned and walked back towards his police car which was further down the block, leaving Ms. Chin-Fong unrestrained in the road.

35.     Officer White once again returned to where he had left Ms. Chin-Fong who was still standing in place, stunned.  She asked whether she could sit down on the sidewalk or a nearby stoop.  Officer White refused to let her sit down, and ordered her to lean against her car instead.  Ms. Chin-Fong stood against the car, and Officer White approached to stand beside her. She asked him whether he had a daughter, and if so, how he would feel if a police officer treated her so violently.  Officer White replied sharply, "if she behaved like that, she deserves it."  Ms. Chin-Fong did not understand what "behavior" he was referring to, and his statement frightened her even more.

36.     While she was leaning against her car, Ms. Chin-Fong informed Officer White that she was experiencing severe head pain.  When he asked if she needed an ambulance, Ms. Chin-Fong, who has no health insurance, expressed concern over who would pay for it.  Officer White told her the city would pay for the ambulance, but he never called an ambulance for her.

37.     Shortly after Officer White had returned to Ms. Chin-Fong, another police officer, Sergeant Shen approached the scene.  Although Sergeant Shen had observed Officer White's unreasonable, unnecessary, and unprovoked actions, she did nothing to assist or intervene at the time.  Subsequently, Sergeant Shen filed a report with the NYPD's Internal Affairs Bureau ("IAB") concerning Officer White's conduct.  In her report, Sergeant Shen stated that Officer White "grabbed the woman by the arm and physically pulled her out of the car," and that as a result "Ms. Chin-Fong did hit her head on the street."

38.     After such an unprovoked and unreasonable use of force, Officer White decided that he could not simply let Ms. Chin-Fong go.  He compounded his utterly inappropriate behavior by arresting her in an attempt to cover up his violent assault and battery.  He determined to charge her with obstruction of a government official and disorderly conduct, although no reasonable officer could possibly have cause to believe that her conduct met the requirements for those offenses.

39.     When Officer White asked Ms. Chin-Fong to step away from her vehicle and towards the sidewalk, she did so quietly and obediently, and he and Sergeant Shen put Ms. Chin-Fong in handcuffs and placed her under arrest.

40.     Until that time, Ms. Chin-Fong had not been physically restrained or patted down.  Upon information and belief, neither officer thought she might flee, or that she posed a threat to their safety.  Ms. Chin-Fong's arrest was completely baseless.  No one told her what she had

done to be placed under arrest until she asked Sergeant Shen whether it was normal for citizens to be treated so abusively. Sergeant Shen told Ms. Chin-Fong she had been "resisting arrest."

41.    At no time, however, was there ever any cause to arrest Ms. Chin-Fong. Ms. Chin-Fong had not resisted Officer White before or after being assaulted and thrown headfirst into the street. More importantly, there had been absolutely no probable cause to believe, and no officer could have believed, that Ms. Chin-Fong's conduct satisfied the elements of the misdemeanor and violation she would ultimately be charged with: obstructing governmental administration in the second degree, and disorderly conduct. Obstructing governmental administration requires an actual intent to obstruct an officer by means of "intimidation, physical force or interference, or by means of any independently unlawful act." At no time did Ms. Chin-Fong intend to obstruct Officer White from doing anything, and the petite 62 year old woman certainly did not – and could not – do so by means of intimidation, physical force, or some other unlawful act. Disorderly conduct, a violation, similarly requires the intent to cause public annoyance or alarm, or the reckless creation of such a risk, by the obstruction of vehicular or pedestrian traffic. Ms. Chin-Fong never exhibited any such intent, nor did she act recklessly when another car ran into her own.

42.    Officer White arrested Ms. Chin-Fong in a panicked attempt to make his egregious and unlawful assault and battery appear justified. Even more egregious than the arrest itself, however, is that for these minor infractions, Officer White caused Ms. Chin-Fong to be held in custody for the rest of the day, handcuffed and subjected to extreme personal indignity, before she was released after midnight that night.

43.    Manufacturing these charges in an attempt to justify and cover up his actions was a futile effort, however. Even if there had been cause for Ms. Chin-Fong's arrest – which there

was not – Officer White's conduct would still have been shocking and without justification.
Officer White's actions were objectively unreasonable and excessive given the nature of his
violent and intrusive conduct, the very minor misdemeanors with which Ms. Chin-Fong was
charged, the fact that she never once posed a threat to the officers or anyone else, and that she
never resisted arrest in any way.

44.     After putting her in handcuffs, Officer White and Sergeant Shen took Ms. Chin-
Fong to the 19th Precinct, located at 153 East 67th Street, New York, New York 10065, and
locked her up in a cell. At the precinct, she complained of pain from the handcuffs, but Officer
White told her that they could not be removed, even once she was inside the cell.  In addition to
the pain from the handcuffs, the pain in her head and throughout her body from being thrown out
of her car continued to worsen.

45.     When another arrestee was brought into her cell, Ms. Chin-Fong was taken out of
the cell and moved to a bench just outside of it.  When she again complained of the pain caused
by the handcuffs, a different officer removed one cuff and attached it to the bench. Ms. Chin-
Fong sat, chained to a bench, frightened and completely humiliated for some time.

46.     Eventually, it became clear that Ms. Chin-Fong required medical attention for the
injuries that she sustained when Officer White threw her out of the car and gave her a
concussion.  She was in a lot of pain, and, as Officer Shen noted, "Ms. Chin-Fong had a lump on
the back of her head." An ambulance was called which took her to the Emergency Department
of the New York-Presbyterian Weill-Cornell Medical Center ("Weill Cornell").

47.     In the ambulance and as she waited at the hospital, Ms. Chin-Fong remained in
handcuffs.  The officer accompanying her, who was not at the scene of the incident, told the
doctor that she had "fallen down." Ms. Chin-Fong corrected him and the officer did not dispute

her account of what actually happened. Ms. Chin-Fong was seen briefly and discharged with a diagnosis of hip pain, blunt head trauma, and instructions for the treatment of motor vehicle crash injuries. The doctor also noted and recorded her seriously high blood pressure.

48.     After she was discharged from the hospital, Ms. Chin-Fong was transported back to the 19th Precinct, where she was again shackled to a chair. At one point Officer White, holding her paperwork, gestured to her and said to another officer "look what I got." Ms. Chin-Fong was incredibly humiliated by Officer White's treatment of her.

49.     Throughout the entire time she was at the 19th Precinct, both before and after the hospital visit, Ms. Chin-Fong remained handcuffed entirely without reason, and the handcuffs caused her extreme pain.

50.     When Ms. Chin-Fong asked to see her address book so that she could call a lawyer that she knew, or someone else that could help, Officer White refused to allow her to have it. He eventually agreed to let her use her cell phone, but she was only able to call her boyfriend because without her address book she did not know anyone else's phone number.

51.     Later, after hearing that she was to be brought to Central Booking, Ms. Chin-Fong again asked to make a telephone call, as she wanted to make sure someone knew where she was being taken. Officer White initially refused, but eventually took her into another room and sat her down in a chair. He took off one of her handcuffs and pulled her arm forcibly over another chair so that he could handcuff her to a railing attached to the wall. This caused Ms. Chin-Fong further unnecessary pain and suffering.

52.     Sometime after 4 p.m., Ms. Chin-Fong was eventually transported, still in handcuffs, to Central Booking. While she was there another officer pulled her aside and commented "you should report him, we are not all like that."

53.   As Ms. Chin-Fong was about to be placed in a cell at Central Booking, an officer noticed her critically high blood pressure in the paperwork from the hospital. This was the first time any officer had considered her blood pressure, which had been reported by the doctor who examined her. The officer told Ms. Chin-Fong that, because of her condition, she did not "belong" in Central Booking. Ms. Chin-Fong, however, still was not released. Although she had suffered considerably and was in poor health, the NYPD continued to imprison her for two minor, non-violent offenses.

54.   From Central Booking, Ms. Chin-Fong was taken to the 20th Precinct. There, she was finally allowed food, her handcuffs were removed, and she was allowed to make phone calls to her boyfriend and son. One officer at the 20th Precinct kept saying to her "this is ridiculous," yet she remained in custody for no apparent reason.

55.   At approximately 7:15 p.m. that evening, Officer White signed a charging instrument against Ms. Chin-Fong for two offenses: Obstructing Governmental Administration in the Second Degree, NYPL § 195.05, a misdemeanor, and Disorderly Conduct, NYPL § 240.20(5), a violation. He alleged that Ms. Chin-Fong attempted to prevent him from performing an official function by "intimidation, physical force and interference and by means of an independently unlawful act." Additionally, he stated that "with intent to cause public inconvenience, annoyance and alarm and recklessly causing a risk thereof," she "obstructed vehicular and pedestrian traffic."

56.   At almost midnight that night, Ms. Chin-Fong was still, inexplicably, being held in custody by the police. There was no reason for her continued detention and, upon information and belief, the officers who held her finally realized that if they did not take her before a judge soon, she would have to spend the night in jail. Ms. Chin-Fong, who had been sitting all day and

night in police custody was finally transported to court, and at 12:30 a.m. she appeared before a judge, again in handcuffs, was charged, and finally released.

**Sergeant Shen Reports Officer White to Internal Affairs**

57.     As noted above, Sergeant Shen filed a complaint with IAB just hours after Officer White's assault of Ms. Chin-Fong.  She described the physical altercation and Ms. Chin-Fong's resultant injuries.  In her report, Sergeant Shen stated that Officer White "grabbed the woman by the arm and physically pulled her out of the car," and that as a result "Ms. Chin-Fong did hit her head on the street."

58.     The IAB made a referral to the Citizen's Complaint Review Board ("CCRB"), but the CCRB never spoke to Ms. Chin-Fong and summarily closed the complaint on October 22, 2012.  Sergeant Shen's complaint was then referred back to the IAB.

59.     The IAB's response to the report initially filed by Sergeant Shen was grossly inadequate.  The complaint was referred to the Chief of Detectives, who in turn referred it to the Chief of Patrol, who in turn referred it back to the Lieutenant at the 19th Precinct.  Upon information and belief, after the complaint was referred to the home precinct of the very officer whose conduct was in question, it seems to have disappeared.

60.     Ms. Chin-Fong contacted the CCRB through her attorneys several times, and she formally initiated a complaint by telephone in late February 2013.  Weeks later, she was informed that the CCRB would not be investigating the allegations, even though the CCRB noted that its jurisdiction includes investigation of complaints that allege "excessive use of force" and "abuse of authority."

61.     Ms. Chin-Fong's complaint – like Sergeant Shen's report to the IAB – was referred back to the police department and the Chief of Detectives.  To date, Ms. Chin-Fong has

not heard a single word about any steps taken to investigate her claims.  Once again, the complaint appears to have simply gone away.

***Ms. Chin-Fong's Continued Medical Problems Due to Officer White's Actions***

62.     As a result of Officer White's actions, Ms. Chin-Fong suffered severe medical consequences that forced her to return to the hospital on multiple occasions, seek treatment from numerous doctors that she could not afford to pay for, and prevented her from working the full schedule she had been working to earn a living as a hairdresser.

63.     Five days after the incident, on October 9, 2012, Ms. Chin-Fong returned to the emergency room at Weill Cornell, still suffering from headaches, lightheadedness, dizziness, and an inability to focus.  She also had experienced episodes of numbness and blurry vision.  Her doctor diagnosed her with "Post-Concussion Syndrome," and said she should follow up with a neurologist.

64.     By October 20, 2012, her headaches had worsened, and she was experiencing neck pain and vision changes.  Ms. Chin-Fong was again seen at the emergency room at Weill Cornell.  Further tests were run and she was instructed to follow up with the Cornell Internal Medicine Associates Clinic and a neurologist.

65.     Despite her best efforts, Ms. Chin-Fong had trouble finding a neurologist who would see her because she is uninsured and appointments with neurologists are extremely costly.  Ms. Chin-Fong was eventually able to get an appointment at the Weill Cornell Neurology Clinic on November 26, 2012, with a follow up on December 12.  By then, her symptoms had worsened further.  She was having short term memory problems, and the problems with her vision made it difficult for her to walk.

66.     Ms. Chin-Fong's doctors at Weill Cornell told her that the recovery from Post-Concussion Syndrome can last for some time, and that unfortunately Ms. Chin-Fong was recovering slowly.  Physical and occupational therapy were recommended, which Ms. Chin-Fong pursued.

67.     Ms. Chin-Fong was also examined by a neuropsychologist in January 2013, who diagnosed her with a concussion, depressive disorder, and cognitive disorder, and recommended vestibular therapy, reduced cognitive and physical activity, and a consultation with a psychiatrist. Additionally, he noted that it was possible she was experiencing absence seizures of either an epileptic or non-epileptic type.

68.     Since then, Ms. Chin-Fong's suffering has not abated and her medical expenses are growing.  She has experienced headaches, dizziness, difficulty walking, sensitivity to light, blurry vision, and facial twitching.  She also finds herself battling intermittent disorientation and confusion.  Meanwhile, she has had to undergo a number of tests and examinations, including an MRI, CT scan, and an EEG.  She has been examined by an ophthalmologist for her eye problems, has undergone reflexology treatment, and started a physical training regimen to help with her walking and dizziness.

69.     Defendants' actions have not just plagued Ms. Chin-Fong physically, but have also caused her severe emotional distress.  Her experience while in the hands of Officer White and the City caused her extreme humiliation and emotional distress, which has also taken a debilitating toll on Ms. Chin-Fong.  After a follow up exam at the Weill Cornell Neurology Clinic, one doctor noted that although her physical symptoms were real and to be expected after such an injury, the incident had also had a traumatic psychological impact which needed to be

addressed.  Ms. Chin-Fong has also been diagnosed with post-traumatic stress disorder and depression.

***The City Drops the Charges Against Ms. Chin-Fong in Favor of an ACD***

70.     Ms. Chin-Fong also suffered through a months-long legal battle over the false and outrageous charges that Officer White levied against her in an attempt to cover up his misconduct.  She appeared in court several times, receiving adjournment after adjournment while the City, which upon information and belief did not want to prosecute her case, tried to get her to enter into a plea.  The City posed several offers to Ms. Chin-Fong, however she rejected them, knowing that she had done nothing wrong.  Finally, after struggling with two undeserved charges for more than half a year, she was vindicated when the City offered an Adjournment in Contemplation of Dismissal without community service or other conditions.

*             *             *

71.     To this day, Ms. Chin-Fong's physical and emotional symptoms persist, and she continues to require medical treatment.  Without insurance, her medical expenses are an incredible financial burden.  The severe injury, pain, and suffering that Ms. Chin-Fong continues to experience is a direct result of the Defendants' acts and omissions on October 4, 2012, as well as their policies, customs and practices.

72.     As a direct and proximate result of the actions and conduct of the Defendants described above, Ms. Chin-Fong suffered deprivation of her constitutional and state law rights; physical and psychological injuries; pain and suffering; emotional distress; lost wages; legal fees and medical expenses.

## FIRST CAUSE OF ACTION

(False Arrest and Imprisonment – Constitutional Violations – 42 U.S.C. § 1983)
Against Defendant White

18

73.    Ms. Chin-Fong repeats and realleges each of the allegations set forth in paragraphs 1 through 72 of this Complaint as though fully set forth herein.

74.    At all relevant times, Defendant White, who was on duty as a New York City police officer, was operating within the scope of his employment and under color of law.

75.    While acting under color of law, Defendant White's actions and/or omissions caused the unlawful arrest and imprisonment of Plaintiff, which deprived her of her rights, privileges, and/or immunities secured by the Unites States Constitution, including her Fourth Amendment right to be free from unreasonable seizure.

76.    Such arrest and detention were unlawful because Defendant White intentionally arrested and confined Ms. Chin-Fong; Ms. Chin-Fong was conscious of her confinement or detention; Ms. Chin-Fong did not consent in any way to her confinement by Defendant White; and Defendant White conducted the arrest without a warrant, without probable cause, without any reasonable cause or belief that a crime had been or was being committed by Plaintiff, and without any other legal justification or privilege.

77.    Defendant White's actions were in violation of Ms. Chin-Fong's clearly established constitutional rights and were objectively unreasonable.  No reasonable officer would believe that Ms. Chin-Fong's arrest was justified under these circumstances.

78.    Defendant White committed the forgoing acts with malicious intent, or with reckless or callous indifference to Ms. Chin-Fong's federally protected rights, resulting in the injuries and damages set forth above.  Defendant White is therefore liable for punitive damages.

79.    As a direct and proximate result of Defendant White's deprivation of Mr. Chin-Fong's Constitutional rights in violation of 42 U.S.C. § 1983, Ms. Chin-Fong sustained serious physical injuries, severe emotional distress, and significant economic loss in the form of missed

work and medical expenses which continue to mount, all of which she continues to suffer from to this day.  Ms. Chin-Fong is thus entitled to an award of compensatory and punitive damages.

## SECOND CAUSE OF ACTION

(Excessive Use of Force – Constitutional Violations – 42 U.S.C. § 1983)
Against Defendant White

80.     Ms. Chin-Fong repeats and realleges each of the allegations set forth in paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81.     At all relevant times, Defendant White, who was on duty as a New York City police officer, was operating within the scope of his employment and under color of law.

82.     While acting under color of law, Defendant White unlawfully and unreasonably used excessive force when he ripped Ms. Chin-Fong from her car and threw her to the ground causing a concussion and other injuries prior to arresting and detaining her for two minor offenses.  Defendant White's excessive, unnecessary and painful use of handcuffs on Plaintiff throughout the day constituted further unlawful and unreasonable use of excessive force.

83.     Plaintiff did not pose any threat to Officer White or Sergeant Shen or the peace, property, or safety of anyone else, and did not attempt to flee or otherwise resist in any way.

84.     Defendant White's conduct directly caused the deprivation of Plaintiff's rights, privileges, and/or immunities secured by the United States Constitution, including her Fourth Amendment right to be free from unreasonable seizure and excessive force.

85.     Defendant White committed the forgoing acts with malicious intent, or with reckless or callous indifference to Ms. Chin-Fong's federally protected rights, resulting in the injuries and damages set forth above.  Defendant White is therefore liable for punitive damages.

86.     As a direct and proximate result of Defendant White's deprivation of Ms. Chin-Fong's Constitutional rights in violation of 42 U.S.C. § 1983, Ms. Chin-Fong sustained serious

physical injuries, severe emotional distress, and significant economic loss in the form of missed

work and medical expenses which continue to mount, all of which she continues to suffer from

to this day.  Ms. Chin-Fong is thus entitled to an award of compensatory and punitive damages.

### THIRD CAUSE OF ACTION

(*Monell* Claim for Failure to Train, Supervise and Discipline – 42 U.S.C. § 1983)
Against Defendant City of New York

87.     Ms. Chin-Fong repeats and realleges each of the allegations set forth in

paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88.     Officer White's actions and omissions described above were carried out pursuant

to overlapping policies, practices or customs of the NYPD and the City of New York which were

in existence at the time of the conduct alleged herein and were engaged in with the full

knowledge, consent, and cooperation and under the supervisory authority of the Defendant City

and its agency, the NYPD.  These policies, practices or customs directly resulted in the above

outlined deprivation of Ms. Chin-Fong's Constitutional rights.

89.     Defendant City and the NYPD, by their policy-making agents, servants and

employees, authorized, sanctioned and/or ratified Officer White's wrongful acts; and/or failed to

prevent or stop those acts; and/or allowed or encouraged those acts to continue.

90.     Officer White's actions, which directly and proximately caused the

aforementioned violations of Plaintiff's constitutional rights, resulted from the City's failure to

properly train or supervise its officers in both the proper use of force and the determination of

probable cause in making arrests and seizures under both state law and the U.S. Constitution.

91.     As a result of the City's widespread policy of tolerating police misconduct of the

kind experienced by Ms. Chin-Fong, Officer White was permitted to bring her back to the

precinct and keep her in custody for an entire day in an attempt to make his unlawful assault and

battery appear justified.  In full view of other officers and his superiors, Officer White subjected

Ms. Chin-Fong to this unnecessary and traumatic charade.  At least two officers affirmatively

expressed their shock at her ordeal, but no one stepped in to stop Officer White.

92.     Upon information and belief, the City of New York knew to a moral certainty that

its officers would encounter on nearly a daily basis situations similar to those described above.

Interacting with citizens who have been in car accidents or are engaged in disputes is a routine

and commonplace part of a police officer's job.  The same is true for situations where a potential

misdemeanor has been committed, and determinations of probable cause, as well as the

appropriate level of force to be used in an arrest, have to be made.

93.     In making these determinations, officers face difficult choices that require more

than mere common sense, but which would be made far easier by adequate training.  Upon

information and belief, Officer White's actions are one of many instances in a long history of

NYPD officers mishandling situations involving the determination of probable cause and use of

force to make misdemeanor arrests, making obvious the need for further training in this area.

The wrong choice by an officer in these situations will frequently result in an arrest without

probable cause or a use of force that is wrongful and excessive, causing a deprivation of a

citizen's Constitutional rights.

94.     The City was at all relevant times aware of persistent and pervasive problems

involving the behavior of its police officers, especially related to the use of excessive force and

unconstitutional arrests.  Its failure to take adequate remedial action resulted in a *de facto* policy

or custom that encouraged and/or condoned the use of inappropriate force by its officers,

including Officer White.

95.     The aforementioned City policies, practices and/customs are evidenced, *inter alia*, by the troubling rise in similar instances in recent years, and the failure of the NYPD to take steps to adequately address them.

96.     The Civilian Complaint Review Board is a City agency that receives, investigates, and reports on civilian complaints of police misconduct.  The CCRB is supposed to be independent from the NYPD.  It makes recommendations to the NYPD when an investigation substantiates a complaint and it believes discipline is required.  It recommends discipline in varying degrees of severity ranging from "charges" to "command discipline" to "instructions" to "no recommendation."  In each year between 2008 and 2012, approximately 50% of the complaints submitted to the CCRB contained allegations of inappropriate force.  Of those allegations, over 70% involved the use of "physical force."

97.     The City, through the NYPD, consistently takes disciplinary action in a substantially smaller number of cases than is recommended by the CCRB, and the level of penalty imposed is disproportionately lower.  For example, the CCRB thought "instructions" or "no recommendation" appropriate for less than 13% of the officers against whom allegations were substantiated in each of the years between 2008 – 2012 (some years less than 6%).  However, in each of 2010, 2011, and 2012, over 60% of cases in which the NYPD pursued discipline resulted in officers being given the extraordinarily minor discipline of "instructions."  These numbers only include the cases that the NYPD actually gets to.  The 2012 year-end report of the CCRB reported that no action had been taken in 130 out of the 213 cases that had been substantiated by the CCRB and referred to the NYPD *in 2011*.

98.     The general non-responsiveness to citizen complaints by the NYPD is also evident in the instant case as set forth above.  Neither Sergeant Shen's initial report to the IAB,

which was referred to the CCRB, or Ms. Chin-Fong's own complaint to the CCRB have resulted in any resolution.

99.     The grossly inadequate response by the NYPD to claims of misconduct by its officers is further evidenced by the fact that claims against the City and the NYPD due to police misconduct, including false arrest, excessive force and assault, have increased at staggering rates over the past five years.  According to the 2012 report from the New York City Office of the Comptroller, the number of new police action claims in 2012 involving improper police conduct rose 22% and nearly doubled in the past 5 years.  According to the report, police action claims were the most frequent type of personal injury claim in 2012, which are themselves the most frequently filed type of tort claim against the City.  Comptroller John C. Liu described this as a "disturbing and persistent trend at the NYPD."

100.     The City's failure to take adequate steps to train and supervise its officers, including Officer White, or to take meaningful corrective steps to address their misconduct, constitutes deliberate indifference to the constitutional rights of its inhabitants.  This deliberate indifference evidences a policy or custom of inadequate training and supervision on the part of the City which encouraged, condoned and/or ratified Officer White's conduct, and was the direct and proximate cause of Ms. Chin-Fong's injuries.

101.     Therefore, the City has violated Ms. Chin-Fong's Constitutional rights, and Ms. Chin-Fong is entitled to an award of damages.

## FOURTH CAUSE OF ACTION

(False Arrest and Imprisonment)
Against All Defendants

102.     Ms. Chin-Fong repeats and realleges each of the allegations set forth in paragraphs 1 through 101 of this Complaint as though fully set forth herein.

103.   At all relevant times, Defendant White, who was on duty as a New York City police officer, was operating within the scope of his employment and under color of law.

104.   On October 4, 2012, Defendants intended to and did arrest, imprison and detain Plaintiff. Plaintiff's confinement continued at various locations for over 15 hours.

105.   At all times, Plaintiff was conscious of and did not consent to either the arrest or the confinement.

106.   Neither the arrest nor subsequent detention was privileged. Defendant White unlawfully arrested and detained Plaintiff without a warrant and without knowledge of any facts or circumstances sufficient to support a reasonable belief that a crime had been or was being committed by Plaintiff.

107.   Defendant White's acts constituted gross recklessness or intentional, wanton or malicious conduct that was so reckless or wantonly negligent as to evidence a conscious disregard of the rights of others. Defendant White is therefore liable for punitive damages.

108.   The City is liable for the tortious acts of its employees, while they are acting within the scope of their employment, on the basis of *respondeat superior.*

109.   As a direct and proximate result of her unlawful arrest, imprisonment, and detention, Ms. Chin-Fong sustained serious physical injuries, severe emotional distress, including great indignity and humiliation, and significant economic loss in the form of missed work and medical expenses which continue to mount, all of which she continues to suffer from to this day. Ms. Chin-Fong is thus entitled to an award of compensatory and punitive damages.

## FIFTH CAUSE OF ACTION

(Assault)
Against All Defendants

110.    Ms. Chin-Fong repeats and realleges each of the allegations set forth in paragraphs 1 through 109 of this Complaint as though fully set forth herein.

111.    At all relevant times, Defendant White, who was on duty as a New York City police officer, was operating within the scope of his employment and under color of law.

112.    Defendant White engaged in intentional physical conduct when he approached Ms. Chin-Fong's car in an unreasonably aggressive and intimidating manner, screamed at her, and opened her car door and grabbed her arm repeatedly, eventually flinging her out of her car.

113.    Defendant White's intentional physical conduct was intended to and did make Ms. Chin-Fong fear for her physical well-being and safety and placed her in apprehension of imminent harmful or offensive contact.

114.    Defendant White's acts constituted gross recklessness or intentional, wanton or malicious conduct that was so reckless or wantonly negligent as to evidence a conscious disregard of the rights of others.  Defendant White is therefore liable for punitive damages.

115.    The City is liable for the tortious acts of its employees, while they are acting within the scope of their employment, on the basis of *respondeat superior*.

116.    As a direct and proximate result of Defendant White's conduct, Ms. Chin-Fong sustained serious physical injuries, severe emotional distress, including great indignity and humiliation, and significant economic loss in the form of missed work and medical expenses which continue to mount, all of which she continues to suffer from to this day.  Ms. Chin-Fong is thus entitled to an award of compensatory and punitive damages.

## SIXTH CAUSE OF ACTION

(Battery)
Against All Defendants

117.   Ms. Chin-Fong repeats and realleges each of the allegations set forth in paragraphs 1 through 116 of this Complaint as though fully set forth herein.

118.   At all relevant times, Defendant White, who was on duty as a New York City police officer, was operating within the scope of his employment and under color of law.

119.   Defendant White intentionally made bodily contact with Ms. Chin-Fong when he grabbed her by the arm repeatedly and then flung her out of her car, as well as when he handcuffed her and placed her in a police car, all without her consent.  This offensive contact continued throughout the day as she spent most of it in handcuffs.  Defendant White's bodily contact with Plaintiff was offensive and clearly wrongful under the circumstances.  Defendant White's size and strength dwarfs that of the older, smaller Ms. Chin-Fong, and at no point did she resist arrest, attempt to escape or evade him, or otherwise cause any threat to any person or property.

120.   Defendant White's acts constituted gross recklessness or intentional, wanton or malicious conduct that was so reckless or wantonly negligent as to evidence a conscious disregard of the rights of others.  Defendant White is therefore liable for punitive damages.

121.   The City is liable for the tortious acts of its employees, while they are acting within the scope of their employment, on the basis of *respondeat superior*.

122.   As a direct and proximate result of Defendant White's conduct, Ms. Chin-Fong sustained serious physical injuries, severe emotional distress, including great indignity and humiliation, and significant economic loss in the form of missed work and medical expenses which continue to mount, all of which she continues to suffer from to this day.  Ms. Chin-Fong is thus entitled to an award of compensatory and punitive damages.

## SEVENTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress)
Against All Defendants

123.   Ms. Chin-Fong repeats and realleges each of the allegations set forth in paragraphs 1 through 122 of this Complaint as though fully set forth herein.

124.   At all relevant times, Defendant White, who was on duty as a New York City police officer, was operating within the scope of his employment and under color of law.

125.   Defendant White violently assaulted and battered Ms. Chin-Fong and then arrested her without probable cause or legal justification, detained her and humiliated her while she was confused and in severe pain and suffering from high blood pressure for almost 16 hours. This occurred following a car accident, when Plaintiff should have been entitled to the assistance of City police officers.  Defendants, for no reason other than to cover up Defendant White's illegal use of excessive force against Ms. Chin-Fong, continued to press clearly unjustified charges against her.  Such treatment constitutes extreme and outrageous conduct.

126.   The extreme and outrageous conduct of Defendants was done with an intent to cause, or at the very least with disregard for the substantial probability of causing, severe mental anguish and emotional distress to Ms. Chin-Fong.

127.   As a direct and proximate result of this conduct, Ms. Chin-Fong suffered severe emotional distress that extended well beyond the day of the incident, and continues to this day. This extreme emotional distress has affected her quality of life, ability to work, and relationships with others, and resulted in the need for ongoing medical treatment, at great economic cost to Ms. Chin-Fong.

128.   Defendant White's acts constituted gross recklessness or intentional, wanton or malicious conduct that was so reckless or wantonly negligent as to evidence a conscious disregard of the rights of others.  Defendant White is therefore liable for punitive damages.

129.   The City is liable for the tortious acts of its employees, while they are acting within the scope of their employment, on the basis of *respondeat superior*.

130.   Therefore, Defendant White and the City of New York have violated Ms. Chin-Fong's rights under New York law by intentionally inflicting emotional distress on Ms. Chin-Fong, and are liable to her for an award of compensatory and punitive damages.

## EIGHTH CAUSE OF ACTION

(Negligent Infliction of Emotional Distress)
Against All Defendants

131.   Ms. Chin-Fong repeats and realleges each of the allegations set forth in paragraphs 1 through 130 of this Complaint as though fully set forth herein.

132.   At all relevant times, Defendant White, who was on duty as a New York City police officer, was operating within the scope of his employment and under color of law.

133.   Defendant White, as a law enforcement officer, had a duty to Ms. Chin-Fong not to engage in conduct that would wrongfully infringe upon her rights.  This duty included a duty not to arrest her without probable cause or to cause her injury by the use of excessive and unnecessary force.  Further, it was Defendant White's intentional and illegal actions that placed Ms. Chin-Fong in an injured and vulnerable position.  As such he had a duty to ensure her proper care and treatment, and that her injuries were not exacerbated.

134.   Defendant White breached that duty through his acts and omissions by unreasonably endangering Ms. Chin-Fong's physical safety and causing her to fear for her own safety.  Additionally, after placing Ms. Chin-Fong in a clearly compromised and vulnerable

position, Officer White continued to subject her to serious physical and emotional trauma, charged her with pretextual offenses in an effort to cover up his misconduct, and held her for no reason for almost 16 hours.  These acts and omissions, as noted above, constitute extreme and outrageous conduct.

135.    As a direct and proximate result of this conduct, Ms. Chin-Fong suffered severe mental anguish and emotional distress that extended well beyond the day of the incident, and continue to this day.  This extreme emotional distress has affected her quality of life, ability to work, and relationships with others, and resulted in the need for ongoing medical treatment, at great economic cost to Ms. Chin-Fong.

136.    The City is liable for the tortious acts of its employees, while they are acting within the scope of their employment, on the basis of *respondeat superior*.

137.    Therefore, Defendants White and the City of New York have violated Ms. Chin-Fong's rights under New York law by negligently inflicting emotional distress on Ms. Chin-Fong, and are liable to her for an award of damages.

**WHEREFORE**, Plaintiff Jennifer Chin-Fong respectfully requests that this Court enter judgment in her favor, jointly and severally against all Defendants:

a)    declaring that Defendants' actions violated her constitutional, statutory, and common-law rights;

b)    awarding compensatory damages for physical, emotional and economic injuries suffered by Plaintiff by reason of Defendants' unlawful and unjustified conduct, and punitive damages on account of Defendants' gross, wanton, willful and malicious conduct, in an amount totaling $1,000,000;

c)      awarding court costs, litigation expenses and reasonable attorneys' fees; and

d)      awarding such other and further relief as may be deemed just and proper.

Dated: New York, New York
        September 19, 2013

GIBSON, DUNN & CRUTCHER LLP

By: _____
Robert L. Weigel (RW 0163)
Peter M. Wade (PW 5462)
200 Park Avenue
New York, New York 10166-0193
Telephone: 212-351-4000
Facsimile: 212-351-4035
RWeigel@gibsondunn.com
PWade@gibsondunn.com

*Attorneys for Plaintiff Jennifer Chin-Fong*